UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 2:19-cv-14106-MIDDLEBROOKS

LOUIS A. MERCADO,

    Plaintiff,

v.

SAMANTHA TORRES, *et al.,*

    Defendants.

_____/

## ORDER ON DEFENDANT ALEX SMITH'S MOTION FOR SUMMARY JUDGMENT
### [ECF No. 61]

**THIS CAUSE** is before the Court on the Defendant Alex Smith's ("Smith") Motion for Summary Judgment ("Motion"). [ECF No. 61]. Smith argues he is entitled to judgment as a matter of law because Smith was not deliberately indifferent to Plaintiff's serious medical needs. [ECF No. 61, p. 2, 3-12; ECF No. 60]. Smith argues that, even if Smith's lack of treatment caused Plaintiff injury, neither a difference in medical opinion nor medical negligence rises to the level of an Eighth Amendment deliberate indifference claim. [ECF No. 61]. Plaintiff disagrees, claiming there are genuine issues of material fact, arguing for the first time in his reply that Smith's actions caused Plaintiff "permanent impairment" and "loss of function" as he "is still unable to form a fist." [ECF No. 70 at 6].

I have considered the Complaint [ECF No. 1], Smith's Motion [ECF No. 61] with supporting Statement of Facts and exhibits [ECF No. 60], Plaintiff's responses [ECF Nos. 70, 76],

and pertinent parts of the record. For the reasons discussed below, Smith's Motion for Summary Judgment is granted.

## I. BACKGROUND

Plaintiff Louis Mercado, an inmate at the Martin Correctional Institution ("Martin CI"), commenced this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging Smith and others were deliberately indifferent to his serious medical needs following a fight with another inmate which took place on May 7, 2015 and which resulted in injuries to Plaintiff. [ECF No. 1].

## II. APPLICABLE LEGAL PRINCIPLES

A.   Civil Rights Standard of Review

To state a claim under 42 U.S.C. § 1983, Plaintiff must allege: (1) the Defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. *U.S. Steel, LLC v. Tieco, Inc.,* 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, Plaintiff must also establish an affirmative causal connection between the Defendant's conduct and the constitutional deprivation. *Marsh v. Butler County,* 268 F.3d 1014, 1039 (11th Cir. 2001).

B.   Standard of Review Governing Motion for Summary Judgment

A motion for summary judgment looks to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Under Fed. R. Civ. P. 56(a), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Grayson v. Warden, Comm'r, Ala. Dep't of Corr.*, 869 F.3d 1204, 1220 (11th Cir. 2017)(quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)).

Issues are genuine if there is sufficient evidence for a reasonable jury to return a verdict for either party. *Great Am. All. Ins. Co. v. Anderson,* 847 F.3d 1327, 1331 (11th Cir. 2017)(relying on *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). In a similar vein, "an issue is material if it may affect the outcome of the suit under governing law." *Great Am.,* 847 F.3d at 1331 (relying on *Anderson,* 477 U.S. at 248). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson,* 477 U.S. at 242). Thus, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, courts should deny summary judgment." *Penley v. Eslinger,* 605 F.3d 843, 848 (11th Cir. 2010).

In reviewing a motion for summary judgment, district courts must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Furcron v. Mail Centers Plus, LLC,* 843 F.3d 1295, 1304 (11th Cir. 2016)(quoting *FindWhat Inv. Grp. v. FindWhat.com,* 658 F.3d 1282, 1307 (11th Cir. 2011)). District courts "'may not weigh conflicting evidence or make credibility determinations'" when reviewing a motion for summary judgment. *See Jones v. UPS Ground Freight,* 683 F.3d 1283, 1292 (11th Cir. 2012)(citing *FindWhat,* 658 F.3d at 1307). Thus, where the facts specifically averred by the non-moving party contradict facts specifically averred by the movant, the motion must be denied, assuming those facts involve a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380 (2007).

The moving party necessarily carries the burden of proof. *Great Am.,* 847 F.3d at 1331. In meeting that burden, non-moving parties may rely on materials enumerated in Fed. R. Civ. P. 56(c), meaning there are some materials that may be relied upon to avoid summary judgment even though they would not be admissible at trial. *Owen v. Wille,* 117 F.3d 1235, 1236 (11th Cir. 1997) (quoting *Celotex,* 477 U.S. at 324). District courts must also consider any "specific facts" pled in Plaintiff's sworn complaint, based on personal knowledge, and executed under penalty of perjury, in opposition to summary judgment. *See* Fed. R. Civ. P. 56(e); *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).

### III. SUMMARY OF MATERIAL FACTS

The material facts, accepted in the light most favorable to Plaintiff, as the non-moving party, are summarized as follows. On May 7, 2015, Plaintiff, a convicted felon, was confined at Martin CI, in the B-Dorm area day room watching television when he was the victim of an unprovoked violent attack by another inmate with a broomstick. [ECF No. 1 at p. 3]. Plaintiff alleges he was forced to defend himself, and as a result, his right hand was injured, becoming swollen, and causing "excruciating pain." [*Id.;* ECF No. 60 at p. 2, ¶ 3]. The fight ceased after a corrections officer sprayed Plaintiff and his attacker with chemical agents. [*Id.* at p. 3].

After receiving a decontamination shower to remove the chemical agents, Plaintiff was escorted to medical where Nurse Castillo performed a post use-of-force examination. [*Id.* at p. 5; ECF No. 60-12; *see also* ECF No. 59-3, 59-4]. During his June 23, 2020 deposition, Plaintiff acknowledged that Nurse Castillo prepared an Emergency Room Record," where she noted that Plaintiff's fourth and fifth knuckles had moderate swelling, and his right thigh had swelling and a two inch abrasion. [ECF No. 60-12 at pp. 14-15]. However, no deformity was observed, and Nurse Castillo's record confirms that no physician was contacted and no treatment provided. [ECF

No. 59-4 at p. 1]. The next day, May 8, 2015, Plaintiff submitted an "Inmate Sick-Call Request" form labeling it "URGENT," and explaining, in relevant part, that his right hand became swollen following a May 7, 2015 fight with another inmate. *See* [ECF No. 59-7 at p. 1]. Plaintiff wrote that he had not received "any medical care" since the fight, felt medical care had been denied, and was requesting medical treatment. [*Id.*].

Plaintiff alleges it took four days from his May 8, 2015 sick call request to be seen on May 12, 2015 at 1325 hour by M. Lecky, a licensed nurse practitioner ("LPN"), who found Plaintiff had a "possible fracture and/or dislocation," and contacted Defendant Smith, a Physician's Assistant ("PA") at 1335 hours, transporting Plaintiff to the medical clinic for further examination. [ECF No. 1 at p. 6; ECF No. 60-2 at p. 1]. Once there, Smith examined Plaintiff, finding the tendon in Plaintiff's right hand swollen, and a loss of definition to the right fourth "MCPJ" (metacarpal proximal joint), with purple discoloration to the arm. [ECF No. 60-3 at p. 1; ECF No. 60 at p. 2-3]. Smith ordered an x-ray of the right hand, and a follow-up in one to two weeks if the x-ray was done by then. [ECF No. 1 at p. 7; ECF No. 60-3 at p. 1; ECF No. 60-12 at pp. 24]. Smith also instructed Plaintiff to continue taking Ibuprofen. [*Id.; Id.; Id.*]. Plaintiff alleges, however, that Smith did not provide him with a splint or wrap of any kind for his right hand. [ECF No. 60-12 at p. 24].

The next day, May 13, 2015, Plaintiff's right hand was x-rayed. [ECF No. 60 at p. 3, ¶¶ 1-4; ECF No. 76 at 2, §§1-4.]. The x-ray report confirmed Plaintiff had a "nondisplaced fracture of the distal fifth metacarpal with dorsal apex angulation," and a "possible nonspecific fracture" of the "distal fourth metacarpal." [ECF No. 60 at p. 3, ¶ 3; ECF No. 76 at p. 2, ¶ 3; ECF No. 60-6 at p. 1]. On May 20, 2015, Plaintiff alleges he was seen for a follow-up by Smith who explained that the x-ray showed an abnormality, but could not explain the nature of the abnormality because he

did not have the full report at that time. [ECF No. 1 at p. 7; ECF No. 60 at p. 3, ¶ 4; ECF No. 76 at p. 2, ¶ 4]. The Chronological Record of Health Care for May 20, 2015 confirms Plaintiff was examined and instructed to continue on Ibuprofen 600 mg. [ECF No. 60-6, at p. 1]. Plaintiff claims Smith indicated he would review the x-ray report, and, if Plaintiff's hand was fractured, he would be called back to medical within a week. [ECF No. 76 at p. 3]. In the interim, Plaintiff further alleges Smith suggested Plaintiff obtain a large library book, place his hand in the center of the book, and then tie a wrap around the closed book which would help keep his hand flat. [ECF No. 76 at p. 3]. Plaintiff alleges Smith was instructing him to "splint" his own hand. [*Id.*]. Plaintiff claims Smith was aware Plaintiff needed a splint, but claims Smith failed to follow his own professional assessment when he refused to wrap or put a splint on Plaintiff's hand. [*Id.*].

On May 27, 2015, Plaintiff was scheduled for a follow-up with Smith to discuss the x-ray report, but due to security issues, the appointment was rescheduled, and a notation made to request a consult with a hand surgeon, and for Plaintiff to continue with Ibuprofen 600 mg twice daily. [ECF No. 60 at p. 4, ¶ 7; ECF No. 60-7 at p. 1; ECF No. 60-8 at p. 1; ECF No. 76 at p. 3, ¶ 7]. Smith noted on the FDOC Consultation Request Form that day that the x-ray report indicated "(1) nondisplaced fracture at 5th mc [metacarpal] with dorsal apex angulation," and "(2) possible nonspecific fx [fracture] distal 4th mc [metacarpal]." [ECF No. 60 at p. 4, ¶ 7; ECF No. 60-8 at p. 1; ECF No. 76 at p. 3, ¶ 7]. The consultation request was approved on June 2, 2015, and an appointment to be seen by a hand surgeon scheduled for June 15, 2015. [ECF No. 60 at p. 4, ¶ 8; ECF No. 60-7 at p. 1; ECF No. 76 at p. 3, ¶ 8].

On June 3, 2015, Plaintiff was again seen by Smith who advised him that the consultation request had been approved, and to continue with the Ibuprofen regime. [ECF No. 1 at p. 8; ECF No. 60 at p. 4, ¶ 9; ECF No. 60-9 at p. 1; ECF No. 76 at p. 3-4, ¶ 9]. Plaintiff points out that, at

the time, Smith also observed the right hand had mild swelling, was tender to the touch, but Plaintiff was able to "partially close right fist." [ECF No. 60-9 at p. 1; ECF No. 76 at p. 3, ¶ 9]. Plaintiff alleges he told Smith he was in excruciating pain and the Ibuprofen was not alleviating the pain, but Smith provided no advice, and indicated he would not change Plaintiff's medication. [ECF No. 76 at 4, ¶ 9].

One June 12, 2015, Plaintiff was transferred from Martin CI to Wakulla Correctional Institution ("Wakulla CI") where he was seen by Dr. Acosta. [ECF No. 60 at pp. 4-5, ¶¶ 10, 11]. After a July 2015 right hand x-ray was taken,[1] he was again seen by Dr. Acosta who advised that his right hand fractures "had healed" and there was nothing more "they would do for his hand," despite Plaintiff's continued complaint of pain and range of motion limitation. [ECF No. 1 at p. 9]. The FDOC Chronological Record of Health Care confirms that during the July 29, 2015 visit, Dr. Acosta noted that Plaintiff stated he "feels much better." [ECF No. 58-15 at p. 1]. Dr. Acosta also observed "no edema, [and] good hand grip," with "no change in alignment since previous exam." [*Id.*]. During his deposition, Plaintiff testified that his right hand grip was weak and he sometimes drops a cup if he has been holding it for too long. [ECF No. 60-12 at p. 30].

In support of his Motion for Summary Judgment, Smith relies upon an affidavit from his expert, Dr. Alan Routman ("Dr. Routman"), an orthopedic surgeon, regarding the standard of care given by Smith following the May 7, 2015 incident. [ECF No. 60-11 at pp. 1-2, ¶¶ 1-3]. In Dr. Routman's expert opinion, after review of Plaintiff's medical records, there was "no evidence" that the fractures to Plaintiff's right hand resulted in a permanent injury or impairment. [*Id.* at p. 2, ¶ 4]. Dr. Routman confirms that Plaintiff suffered fractures to his fourth and fifth metacarpals

---

[1] The x-ray report revealed a "subacute, healing boxer's fracture of the distal fifth metacarpal and a subacute, healing nondisplaced distal fourth metacarpal fracture," with "no change in alignment since previous exam." [ECF No. 60-10 at p. 1].

of the right hand, and healed without any change in position of the fracture fragments. [*Id.* at p. 4, ¶ 11]. Dr. Routman opines that the Plaintiff's fractures are known as "boxer's fractures," and are "exceedingly common." [*Id.* at ¶ 12]. Dr. Routman further opined that these type of fractures "typically" heal within six to seven weeks. [*Id.*]. Dr. Routman explained he reviewed post-injury follow-up radiographs which revealed no displacement or angulation. [*Id.* at pp. 4-5, ¶ 13]. Dr. Routman concluded it did not appear that Plaintiff's right hand fracture caused a permanent injury or impairment, and his symptoms would have been resolved, at most, within two to three months. [*Id.* at p. 5, ¶ 14].

## IV. DISCUSSION

A.   Applicable Law

The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment that they receive while in prison. *See Farmer v. Brennan,* 511 U.S. 825, 832 (1994). Deliberate indifference to the serious medical needs of prisoner's violates the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Brennan v. Headley,* 807 F. App'x 927, 934 (11th Cir. 2020)(per curiam)(citing *Estelle,* 429 U.S. at 104). However, "the Constitution doesn't require that the medical care provided to prisoners be 'perfect, the best obtainable, or even very good.'" *Keohane v. Fla. Dep't of Corr. Sec'y,,* 952 F.3d 1257, 1266 (11th Cir. 2020)(quoting *Harris v. Thigpen,* 941 F.2d 1245, 1510 (11th Cir. 1991)). Thus, "medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris,* 941 F.2d at 1505. "A simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment fails to support a claim of cruel and unusual punishment" under the Eighth Amendment." *Id.*

To prevail on an Eighth Amendment deliberate indifference claim, Plaintiff must demonstrate: (1) an objective component by showing he has a serious medical need; and, (2) a subjective component, by showing the prison official acted with deliberate indifference to that need. *See Estelle*, 429 U.S. at 104-05; *Brennan,* 807 F. App'x at 934 (citing *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir. 2003)); *Wright v. Langford,* 562 F. App'x 769, 778–79 (11th Cir. 2014)(per curiam)(citing *Burnette v. Taylor,* 533 F.3d 1325, 1330 (11th Cir. 2008)). There must also be evidence of causation between the defendants' indifference and the plaintiff's injury. *Mann v. Taser Int'l, Inc.,* 588 F.3d 1291, 1306-07 (11th Cir. 2009).

With respect to the objective component of a deliberate indifference claim, a "serious medical need" can be demonstrated in one of two ways. The first is through evidence that the medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the need for a doctor's attention." *Mann,* 588 F.3d at 1307 (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1187 (11th Cir. 1994). Alternatively, a plaintiff may prove that a serious medical need existed through evidence that delayed treatment worsened the medical condition. *See Mann,* 588 F.3d at 1307. Thus, a delay in treatment which exacerbates the condition, harms a prisoner's health, or results in a prisoner suffering substantial pain can demonstrate a serious medical need. *See generally Estelle,* 429 U.S. at 105-06; *Mann,* 588 F.3d at 1307. Under either scenario, "[t]he medical need must be one that, if left unattended, poses a substantial risk of harm." *Mann* 588 F.3d at 1307 (quoting *Farrow,* 320 F.3d at 1243). Thus, when reviewing a deliberate indifference claim based on a delay in medical care, district courts consider "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Goebert v. Lee Cty.,* 510 F.3d 1312, 1327 (11th Cir. 2007).

Once a serious medical need has been objectively established, the analysis shifts to the subjective component, which requires proof that a defendant acted with deliberate indifference to that need. "To establish deliberate indifference, a plaintiff must show that the defendant had: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence.'" *Wright v. Langford*, 562 F. App'x 769, 778 (11th Cir. 2014) (quoting *Burnette v. Taylor,* 533 F.3d 1325, 1330 (11th Cir. 2008)). Subjective knowledge is "a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence," or from a factfinder's finding that the risk of harm was obvious." *See Farmer,* 511 U.S. at 842; *United States v. Santos,* 553 U.S. 507, 521 (2008)(plurality opinion)(noting that a person's possession of knowledge usually must be proven by circumstantial evidence). Because "'a finding of deliberate indifference requires a finding of the defendant's subjective awareness of the relevant risk, a genuine issue of material fact exists only if the record contains evidence, albeit circumstantial, of such subjective awareness.'" *McElligott v, Foley,* 182 F.3d 1248, 1255 (11th Cir. 1999)(quoting *Campbell v. Sikes,* 169 F.3d 1353, 1354 (11th Cir. 1999)).

B.  <u>Analysis</u>

I first address whether on this record, there exists a genuine issue of material fact as to Plaintiff's purported "serious medical need" at the time he encountered Defendant Smith. When viewed in the light most favorable to Plaintiff, it appears there are sufficient facts from which a jury could conclude that Plaintiff's hand injury was serious enough to require medical treatment. Smith was aware that Plaintiff had been in a physical altercation with another inmate, Plaintiff was complaining of excruciating pain, and his hand was visibly bruised, swollen and disfigured. Indeed it is not disputed that Defendant Smith himself provided medical treatment to Plaintiff, which is

an indication that Smith viewed Plaintiff's injury as significant enough to warrant medical attention. Smith may not have had actual knowledge that Plaintiff's hand was fractured, but he suspected it may be, which is presumably the reason he ordered x-rays. Therefore arguably, Defendant Smith had more than mere knowledge of Plaintiff's symptoms; and, was able to foresee what the ultimate diagnosis was. *See Johnson v. Quinones,* 145 F.3d 164, 168 (4th Cir. 1998)(finding deliberate indifference requires that a defendant have actual knowledge of a serious condition, not just knowledge of its symptoms).

As to the subjective prong of the analysis, however, the evidence cannot support a finding that Defendant Smith acted with deliberate indifference to Plaintiff's medical condition. Smith examined Plaintiff on May 12, 2015, five days after the fight and the same date on which LPN Lecky found there was a possibility of a fracture. Smith examined Plaintiff, ordered an x-ray, requested approval for a consultation with a hand specialist, and instructed Plaintiff to continue taking Ibuprofen. Where, as here, "an inmate has received medical care, courts hesitate to find an Eighth Amendment violation." *Keohane v. Fla. Dep't of Corr. Sec'y,* 952 F.3d 1257, 1266 (11th Cir. 2020)(quoting *Harris v. Thigpen,* 941 F.2d 1245, 1510 (11th Cir. 1991)). A simple difference "in the course of treatment fails to support a claim of cruel and unusual punishment" under the Eighth Amendment." *Id.*

Plaintiff, however, claims Smith refused to put a splint on Plaintiff's right hand, and instead instructed him to splint his own hand. [ECF No. 76 at pp. 4-5]. Plaintiff claims after Smith received the x-ray report, he unnecessarily "waited over a month to schedule the referral" for Plaintiff to see a hand specialist. [*Id.* at pp. 5-6]. However, this is belied by the evidence, which reveals that the x-ray was done on May 13, 2015, and two weeks later, on May 27, 2015, the same day he met with Plaintiff, Smith ordered the referral, which was not approved until June 2, 2015, and then

scheduled for June 15, 2015. [ECF No. 60-8 at p. 1]. Smith did not cause the one-month delay, as alleged. Instead, the record evidence supports a finding that the delay was due to obtaining approval and then obtaining an appointment date from the hand specialist. Further, during this time period, the record reflects Plaintiff was instructed to continue his Ibuprofen 600 mg regime. [*Id.*]. The fact that Plaintiff disagrees with Smith's course of treatment does not mean the prescribed course of conduct rises to the level of a constitutional violation.

Further, there is no objective evidence in the record to suggest that the delay in obtaining a hand specialist examination was detrimental to Plaintiff's medical treatment. *See Thomas v. City of Jacksonville,* 731 F. App'x 877, 881 (11th Cir. 2018)(noting plaintiff failed to include any evidence that any delay produced negative consequences)(quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1182-84, 1188 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer,* 536 U.S. 730 (2002)). In fact, the July 2015 x-ray report and Plaintiff's FDOC Chronological Health Care Record confirm Plaintiff was feeling "much better," the fractures had healed, and he had "good" hand grip. [ECF No. 58-15 at p. 1; ECF No. 60-10 at p. 1]. Even if I were to credit Plaintiff's suggestion that he has suffered a permanent "loss" of function in his right hand (a contention raised for the first time in summary judgment briefing and which conflicts with medical records), there is no evidence from which an inference of causation could be drawn.

If Plaintiff suggests there was a delay between his May 8, 2015 sick call request and the time he was eventually seen by the medical unit, he has not alleged that this delay was attributable to Smith. It is uncontroverted Plaintiff could have, but did not declare a medical emergency on May 8, 2015, and instead filed a sick call request. In response, he was seen on May 12, 2015 by LPN Lecky in response to his sick call request, and that same day also seen by Smith. Thus, he has not shown a delayed medical treatment claim cognizable under the Eighth Amendment, much

less that any delay "was unreasonable and adversely affected Plaintiff's medical treatment. *Thomas, supra.*

Even assuming that Smith somehow delayed Plaintiff's medical treatment, Plaintiff has not shown how the delay in medical treatment harmed him. *See Thomas,* 731 F. App'x at 882. Further, Plaintiff's claim that Smith failed and/or refused to splint his hand shows conduct that was, at most, no more than merely negligent," and does not rise to an Eighth Amendment constitutional claim. *See Brown v. Johnson,* 387 F.3d 1344, 1351 (11th Cir. 2004)).

## V. CONCLUSION

Based upon the foregoing, there is no genuine issue of material fact regarding Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Smith. Accordingly, it is

**ORDERED AND ADJUDGED** that:

1. Defendant Smith's Motion for Summary Judgment [ECF No. 61] is **GRANTED**;

2. Final Judgment will be entered in favor of Defendant Smith by separate Order.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 9th day of March, 2021.

Donald M. Middlebrooks
United States District Judge

cc:
Louis A. Mercado, *Pro Se*
DC#C09615
Marion Correctional Institution
Inmate Mail/Parcels
Post Office Box 158
Lowell, FL 32663

Alexander Dombrowsky, Esquire
Attorney for Smith
Chimpoulis, Hunter & Lynn
150 South Pine Island Road, Suite 510
Plantation, FL 33324
Email: adombrowsky@chl-law.com

Christopher M. Sutter, Ass't Atty Gen.
Attorney for Torres, Guzman, & Posten
Office of the Attorney General
110 S.E. 6th Street, 10th Floor (Civil)
Fort Lauderdale, FL 33301
Email: christopher.sutter@myfloridalegal.com